UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CECILIA WILKERSON,<br>on behalf of E.W.,<br><br>      Plaintiff,<br><br>   vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)    No. 2:10-CV-87 (CEJ)<br>)<br>)<br>)<br>)<br>) |

# MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

## I. Procedural History

On January 31, 2008, plaintiff filed an application for child's supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. (Tr. 64-69). Plaintiff was born on December 25, 2007, and claims to have been disabled since birth. Id. Following the initial denial of plaintiff's application on April 29, 2008, plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 31-35).

A hearing was held before an ALJ on December 4, 2009. (Tr. 16-30). The ALJ issued a written decision denying plaintiff's claims on March 25, 2010. (Tr. 5-15). On October 14, 2010, the Appeals Council affirmed the ALJ's decision. (Tr. 1-3). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Application Documents

The administrative record establishes that plaintiff was 23-months old at the time of December 4, 2009 hearing. (Tr. 31-35). Plaintiff lives with his biological parents, three older siblings. In his application, plaintiff claims to be disabled because of spina bifida[1] and partial complex seizure disorder. (Tr. 32). At the time of the hearing, speech and cognitive delay were also identified as alleged impairments. (Tr. 9).

### B. Medical History

At birth, plaintiff was noted to have a visible defect on his lower back. (Tr. 118). After an ultrasound and MRI, plaintiff was diagnosed with spina bifida with a lumbar lipomeningocele[2] and tethering of the spinal cord. (Tr. 123).

On January 28, 2008, plaintiff was admitted to hospital for seizure-like symptoms. (Tr. 140). He was given phenobarbital,[3] underwent testing, and was diagnosed with partial complex seizures. (Tr. 143).

---

[1]Spina bifida is a birth defect in which the spinal canal does not close before birth. Myelomeningocele, the type of spina bifida plaintiff was diagnosed with, is considered the most serious type and is often associated with serious permanent neurological symptoms. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002525

[2]Lipomeningocele is a condition associated with spina bifida and commonly characterized by a subcutaneous fat collection in the lower back which may be tethered around the spinal cord. The primary goal of surgery is to untether the spinal cord. See http://www.ncbi.nlm.nih.gov/books/NBK9358

[3]Phenobarbital is a barbiturate used to control seizures. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000542

On March 21, 2008, plaintiff was seen by Nitin Patel, M.D. (Tr. 164). Dr. Patel noted that plaintiff had not had a seizure since his January 28, 2008 hospitalization and instructed that plaintiff be weaned off the phenobarbital prescribed on the earlier visit.

On April 25, 2008, William Busby, M.D., conducted a consultive evaluation of plaintiff's medical records. (Tr. 179-184). Dr. Busby noted that plaintiff had been diagnosed with spina bifida and partial complex seizure disorder. As a result of these conditions, Dr. Busby opined that plaintiff had a marked limitation in the domain of health and physical well-being, but was not limited in his ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for himself.

On May 5, 2008, plaintiff underwent surgery to remove the lipomeningocele and untether his spinal cord. (Tr. 201). The surgery was performed by Usiakimi Igaseimokumo, M.D. and proceeded without complication. At a follow-up appointment, plaintiff was said to be doing well. (Tr. 224).

On June 19, 2008, plaintiff was seen by Patricia Koonce, M.D. (Tr. 226). Dr. Koonce noted that plaintiff was doing well and was not exhibiting any neurological symptoms. On July 14, 2008, plaintiff was again noted to be doing fine and an ultrasound of plaintiff's kidneys and bladder was normal. (Tr. 245).

On January 15, 2009, plaintiff was evaluated by Tracy Stroud, D.O. (Tr. 247). Dr. Stroud noted plaintiff to being doing well and able to walk. Plaintiff was also seen by Dr. Igaseimokumo, who stated that an MRI of plaintiff's lumbar spine showed some residual tethering, but no new findings of concern. (Tr. 251).

On April 29, 2009, plaintiff was seen by Beth Woolery, M.D. (Tr. 260). Dr. Woolery noted that plaintiff had been diagnosed with hydronephrosis,[4] but that it had almost completely resolved.

On June 1, 2009, plaintiff underwent a developmental assessment evalution by Mellissa Morrison, B.S.E., M.Ed. (Tr. 190-98). Morrison concluded that plaintiff had a cognitive developmental delay of 5 months or 30%. She also concluded that plaintiff's speech development was delayed by 6 months or 35%. Plaintiff's developmental progress was considered age-appropriate in motor function and self-help, but with a slight (15%) delay in his social-emotional development.

On July 16, 2009, plaintiff was again examined by Dr. Igaseimokumo. (Tr. 263). Plaintiff was noted to have begun walking at 11-12 months of age and to be very appropriate for his age. Dr. Koonce also examined plaintiff and noted that the had begun speaking, but only knew 5-10 words. (Tr. 265-68). Dr. Koonce also reported that plaintiff was able to understand simple directions, was happy and energetic, but recommended that plaintiff participate in speech therapy. It was also noted that plaintiff suffered from a neurogenic bladder,[5] which required monitoring.

The final entry in the medical record indicates plaintiff was again examined by his physicians on October 15, 2009. (Tr. 284). Jane Emerson, M.D. noted that plaintiff's mother had no motor concerns and that plaintiff was walking at a age-appropriate level. Dr. Emerson also stated that plaintiff was taking no medications and

---

[4]Hydronephrosis is the swelling of one or both kidneys due to the backup of urine. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001535/

[5]Neurogenic bladder is a diminution in bladder control due to a neurological condition—in this case, spina bifiida. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001761/

was pleasant and age-appropriately cooperative. Plaintiff was also seen the same day by Dr. Stroud, who described plaintiff's speech and cognitive concerns as mild and noted that plaintiff as able to put some words together and point to some of his body parts. (Tr. 290).

Tiffany Bolton, O.T.R. (registered occupational therapist) also examined plaintiff on October 15, 2009. (Tr. 287). Bolton noted concerns about plaintiff's developmental delay and cognitive development. Bolton assessed plaintiff's functional level to be at 18-20 months—a delay of approximately 8-17 percent of plaintiff's chronological age.[6]

### C. The December 4, 2009 Hearing

Plaintiff's biological mother and father were present on plaintiff's behalf at a hearing before the ALJ. (Tr. 18-29). Plaintiff's mother testified that plaintiff: suffers from spina bifida; is doing well physically; has problems with his language development in that he is only able to speak 15 words when he should be speaking 50; mumbles his words or sometimes resorts to screaming or yelling; throws things a lot; participates in speech therapy once a week; sometimes has trouble understanding instructions; was diagnosed with a seizure condition, but has not had a seizure since he was 2 months old and is no longer taking medication for the condition.

### IV. The ALJ's Decision

In the decision issued on March 24, 2010, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity at any time pertinent herein.

2. Plaintiff suffers from the following severe impairments: spina bifida, lumbosacral limomeningocele, and speech delay/cognition disorder. Although these impairments are severe they do not singly or in

---

[6]Plaintiff was 21 months, 20 days old on October 15, 2009.

combination meet or equal the level of severity of any impairment listed in Appendix 1, Subpart P., of Regulations No. 4.

3.  Plaintiff does not have a medically determinable impairment or combination of impairments that are functionally equal to any impairment listed in Appendix 1, Subpart P., of Regulations No. 4.

4.  Plaintiff, therefore, is not disabled at any time as of January 31, 2008, the date of filing of his application for Supplemental Security Income through the date of this decision.

(Tr. 8-13).

## V. Discussion

To be eligible for SSI benefits, a claimant must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A child under the age of eighteen will be declared disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). To determine whether a child claimant is disabled, the Commissioner employs a three-step evaluation process. The Commissioner first determines whether the child is engaged in substantial gainful activity. If the child is so engaged, he is not disabled. 20 C.F.R. § 416.924(b). Second, the Commissioner determines whether the child has a "severe impairment." If the child's impairment is not severe, he is not disabled. 20 C.F.R. § 416.924(c). Finally, the Commissioner determines whether the child's impairment meets, medically equals, or functionally equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the child's impairment is, medically equals, or functionally equals a listed impairment, he is disabled under the Act. 20 C.F.R. § 416.924.

In determining functional equivalence—for instance, where the claimant has multiple severe impairments, none of which meet the criteria set forth in Subpart P, Appendix 1—the Commissioner considers the child claimant's functioning in six functional categories, or "domains." The six domains are:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for oneself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). For an impairment to functionally equal a listed disability, it must result in either (1) marked limitations in two domains or (2) an extreme limitation in one domain. 20 C.F.R. § 416.926a.

The Commissioner will find a "marked" impairment in any domain when the impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. A "marked" impairment is the equivalent of functioning found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2)(i). If a claimant has not reached the age of 3 years old, a limitation is "marked" if his functional level is more than one-half, but less than two-thirds, of the claimant's chronological age. Id.

An "extreme" limitation is found in a domain when a claimant's impairment interferes very seriously with the ability to independently initiate, sustain, or complete activities. It is the equivalent of functioning found on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. §

416.926a(e)(3)(i). If a claimant has not reached the age of 3, a limitation is "serious" if his or her functional level is one-half or less of the claimant's chronological age. Id.

### A. Standard of Review

The district court must affirm the Commissioner's decision, "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). The court must consider any evidence that detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

### B. Analysis

Plaintiff alleges that the ALJ erred by determining that plaintiff suffered from less than marked limitations in three functional domains: (1) ability to acquire and use information; (2) ability to attend and complete a task; and (3) level of overall health and physical well-being. Alternately, plaintiff argues that the ALJ erred by failing to find that plaintiff met the criteria contained in Listing 111.09 for communication impairment associated with a diagnosed neurological disorder.

#### 1. Acquire and Use Information

The ALJ determined that plaintiff did not have a marked limitation in this domain because, even though an evaluation by Morrison on June 1, 2009 indicated a 30% cognitive delay and 35% language delay, other medical evidence supported a finding of impairment less than two-thirds of plaintiff's chronological age. The Court finds that substantial evidence supports this determination. The later-completed examinations of plaintiff on October 15, 2009 indicated that plaintiff was able to complete simple tasks and assessed his developmental delay to be only 8-17 percent of his chronological age. In addition, his treatment providers noted that plaintiff was able to put some words together, point to some of his body parts, and use building blocks. Under these circumstances, substantial evidence supported the conclusion that plaintiff was not subject to impairment in this domain that marked, i.e., equivalent to less than two-thirds of plaintiff's chronological age.

2. **Attend and Complete Tasks**

The ALJ again considered plaintiff's cognitive impairment and determined that his limitation in attending and completing tasks was less than marked. Evidence in the record substantially supports this finding. Although plaintiff's mother and treatment providers noted some concern about plaintiff's ability to focus and complete tasks, there was also substantial evidence that plaintiff was able follow simple instructions, brush his teeth, and help dress himself. Again, the most recent medical records from several of plaintiff's regular treatment providers also establish that plaintiff was only mildly developmentally impaired in this category. The only quantitative assessments in the record indicate that plaintiff's cognitive ability was close to the "marked" limitation range on June 1, 2009, but below the "marked" limitation range on October 15, 2009. It is the ALJ's responsibility to resolve any inconsistencies in the medical

record. Pearsall, 274 F.3d at 1217. Because substantial evidence indicated that plaintiff was less than two-thirds delayed in his ability to attend and complete tasks, the ALJ did not err in finding no marked limitation in this category.

### 3. Health and Physical Well-Being

In addition to the other criteria for determining whether a limitation is "marked" or "severe," 20 C.F.R. § 416.926a provides that a "marked" limitation in a claimant's health and physical well-being is characterized by "frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs." Frequent means "episodes of illness or exacerbations occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more"; it also means episodes that occur more often then 3 times a year *or* last more than two weeks, "if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity." Id.

The ALJ noted that plaintiff had undergone surgery to treat his spina bifida condition and had been hospitalized for seizures, but that his conditions had improved since these episodes at 2 and 5 months of age, respectively. The Court finds that substantial evidence supports this finding. Following plaintiff's birth, plaintiff was hospitalized only twice for the procedures noted by the ALJ. Shortly after these hospitalizations, a state medical consultant opined that plaintiff had marked limitation in his health and physical well-being. The medical record after this consultative evaluation, however, substantially supports a finding that plaintiff's limitation in this category is less than marked. Although plaintiff was subject to additional examinations, therapy, and monitoring due to his spina bifida, plaintiff's treating physicians continually described plaintiff's physical condition as doing well and age appropriate. The record also does not indicate that plaintiff continued to experience frequent illness

or exacerbations related to his impairments that meet the frequency or durational criteria set forth in 20 C.F.R. § 416.926a. After 5 months of age, there were no invasive treatments, hospitalizations, or medications prescribed after the two episodes identified by the ALJ. See 20 C.F.R. § 416.926a(l)(4)(i-v) (setting forth examples of limitations on health and physical well-being). Thus, the ALJ did not err considering the more-recent medical record to find plaintiff had less than marked limitation in his health and physical well-being.

4. **Listing 111.09**

Finally, plaintiff argues that the ALJ erred by determining that plaintiff did not meet the criteria set forth in Listing 111.09 of Subpart P, Appendix 1. 20 C.F.R. § 404, app. 1. To meet Listing 111.09, a claimant must have a documented neurological disorder and resulting communication impairment defined as:

> A. Documented speech deficit which significantly affects the clarity and content of the speech; or
>
> B. Documented comprehension deficit resulting in ineffective verbal communication for age; or
>
> C. Impairment of hearing as described under the criteria in 102.10 or 102.11.

20 C.F.R. § 404, app. 1.

The ALJ did not specifically address Listing 111.09. But substantial evidence supports the finding that plaintiff does not meet the criteria for this listing. Although plaintiff was noted to have mild developmental delay in his speech and ability to communicate, the record did not indicate that this was related to his diagnosed neurological disorder, spina bifida. In addition, whatever difficulty was documented as to the clarity and content of plaintiff's speech or ability to comprehend verbal

communication must be evaluated in context with plaintiff's age. Again, the observations of plaintiff's treating physicians and most recent developmental assessment indicate that plaintiff's deficit in communication was mild and less than marked. Thus, the ALJ did not err in finding that plaintiff did not meet Listing 111.09.

### VI. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole. Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in his brief in support of complaint [Doc. #21] is **denied**.

A separate judgment in accordance with this order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of September, 2012.